**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARK C. DONALDSON,**

**Plaintiff,**

**v.**

**US BANK NATIONAL ASSOCIATION and BANK OF AMERICA,**

**Defendants.**
______________________________________/

**Case No. 12-13435**

**Hon. Denise Page Hood**

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT,**
**ORDER DENYING MOTION TO STRIKE**
**AND**
**ORDER DISMISSING ACTION**

## I. BACKGROUND

On August 6, 2012, Plaintiff Mark C. Donaldson, proceeding *pro se*, filed the instant suit against Defendants US Bank National Association ("US Bank") and Bank of America ("BOA") alleging: Unlawful Foreclosure by Advertisement (Count I); Real Estate Settlement Procedures Act ("RESPA") and Truth in Lending Act ("TILA") Violations (Count II); Federal Debt Collections Practices Act ("FDCPA") Violations (Count III); and, Unjust Enrichment and Plaintiff as Third Party

Beneficiary (Count IV).

Donaldson alleges that on April 28, 2006, he executed a Mortgage and Promissory Note to FMF Capital, LLC with Mortgage Electronic Registration System ("MERS") as the Mortgagee in the amount of $161,000 for the property located at 1377 S. Karle St., Westland, Michigan. (Comp., ¶ 3) Plaintiff filed bankruptcy and the debt was discharged in April 2009. (Comp., ¶ 4) BOA published a Sheriff's Sale Date of April 29, 2012, which date was adjourned unknown to Plaintiff. (Comp., ¶ 6) The property was sold at a Sheriff's Sale on May 3, 2012 by a Foreclosure by Advertisement and the redemption period expired on November 3, 2012. (Comp., ¶ 7) Defendant BOA did not publish or post the adjournment of the Sale Date. (Comp., ¶ 8) Defendant US Bank was the purchaser of the property at the Sheriff's Sale in the amount of $202,614.89. (Comp., ¶ 9)

Donaldson claims he made multiple attempts at loan modification through Defendant BOA. (Comp., ¶ 10) He asserts Qualified Written Requests per RESPA were submitted from April 2011 to March 2012, which Donaldson claims were not properly responded to by Defendants. (Comp., ¶ 11) Donaldson provided multiple letters disputing the debt to Defendant BOA's attorneys, Trott & Trott, from April 2011 to March 2012. (Comp., ¶ 12) He attempted to locate the original promissory note, which Donaldson claims has yet to be disclosed to him. (Comp., ¶ 14)

Donaldson asserts that it is unknown whether Defendant US Bank is or ever has been the holder of the Note. (Comp., ¶ 14) Donaldson claims there are no assignments, transfers or other documents recorded with the Wayne County Register of Deeds conveying interest held by FMF Capital to another party. (Comp., ¶ 15) The assignment of mortgage was recorded on April 21, 2011transferring the mortgage from MERS to Defendant US Bank. (Comp., ¶ 16) Defendant US Bank has a Pooling and Servicing Agreement that defines the procedures for transferring Mortgages and Notes. (Comp., ¶ 17) The Closing Date for transferring Mortgages and Notes to the Trust was June 27, 2006. (Comp., ¶ 18)

The Court previously denied Plaintiff's Motion for Partial Summary Judgment. (Doc. No. 19) This matter is now before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Motion to Strike Defendants' Separate State of Undisputed Material Facts. Responses and replies have been filed and a hearing held on the matter.

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B. Wrongful Foreclosure (Count I)**

Defendants assert that Donaldson's wrongful foreclosure claim based on five

theories is without merit: 1) the separation of the Mortgage and Note, nullifying the Mortgage assignment; 2) the pre-foreclosure notices were improper and insufficient; 3) Defendant lacked standing to foreclose based on a Pooling and Servicing Agreement; 4) that BOA was not entitled to foreclose as the servicer of the loan; and 5) Plaintiff was denied the opportunity to be reviewed for loan modification prior to foreclosure.

Donaldson responds by relying on his Motion for Partial Summary Judgment and Reply to the Defendants' Response to Donaldson's motion which, as noted above, the Court denied.

**1. "Note-splitting" theory**

As to Donaldson's "note-splitting" argument, this theory has been rejected by the Michigan Supreme Court in *Residential Funding Co. v. Saurman,* 805 N.W.2d 183, 184 (Mich. 2011). Transfers of the underlying indebtedness have no impact on the validity of the foreclosure. *Leone v. Citigroup,* 2012 WL 1564698, at *3 (E.D. Mich. May 2, 2012). There can be no genuine issue of material fact that the separation of the Mortgage and Note does not nullify any Mortgage assignment.

**2. Pre-foreclosure notices**

Defendants argue that there is no genuine issue of material fact that Defendant BOA failed to give notices as to the foreclosure and the Sheriff's Sale date.

Defendants submitted exhibits showing that Defendant BOA published notice of the sale and adjournments in the Detroit Legal News and posted the notice of the sale at the property prior to the foreclosure. (Resp., Doc. No. 20, Exs. T, U) Donaldson responds that the documents were not notarized and merely stamped with the Deputy Sheriff's name. Donaldson asserts that just because the name of the Detroit Legal News appears on the document, this does not prove that such a notice was in fact published. Defendants reply that Donaldson has not submitted any authority to show that the documents published in the Detroit Legal News are required to be notarized or that a hand signed signature is required.

The Court reviewed the documents submitted by Defendants. These documents support their claim that notices of the foreclosure sale and adjournments of the foreclosure sale were published. A Sheriff's Deed affidavit is presumptive evidence of the facts contained in the affidavit. M.C.L. § 600.3264; *Prudential Ins. Co. of America v. Dworkin,* 266 Mich. 105, 109-111 (1934). There remains no genuine issue of material fact that notices were properly published regarding the Sheriff's Sale.

**3. Standing under the PSA and as a Servicer**

As to Donaldson's argument that Defendants failed to comply with the Pooling and Servicing Agreement, courts have also held that a mortgagor has no standing to challenge whether the procedures of the PSA was followed. *See Estate of Malloy v.*

*PNC Bank,* 2012 WL 176143 at *4-*5 (E.D. Mich. 2012)(Defaulted mortgagors are neither parties to nor intended third-party beneficiaries of the Pooling and Servicing Agreement and therefore lack standing to challenge failure to comply with the PSA.). It is noted that in its September 4, 2013 Order Denying Plaintiff's Motion for Partial Summary Judgment, the Court held that based on M.C.L. § 600.3204(1)(d), Defendant US Bank, as the servicer of the mortgage at issue, had the authority to foreclose on the mortgage at issue. Donaldson's argument that Defendants lacked standing to foreclose on the mortgage at issue is without merit.

**4. Loan Modification**

Regarding Donaldson's argument that he was not given the opportunity to apply for a loan modification, Defendants argue in their motion that Defendant US Bank was not required to schedule a meeting with Donaldson because he failed to return the requested documents (prior to the scheduling of a meeting) as required under M.C.L. § 600.3204(4). Defendants submitted documentation that Donaldson was to submit certain documents to Trott & Trott and that he failed to submit the documents required. (Resp., Doc. No. 20, Ex. S) Donaldson testified that he did not submit the documents required to Trott & Trott. (Donaldson Dep., pp. 33-36, Doc. No. 20, Ex. E)

Michigan law provides that a meeting regarding a loan modification is not

required if the mortgagor fails to provide documents required by M.C.L. § 600.3205b(2). M.C.L. § 600.3204(4). Based on the documents submitted by Defendants and Donaldson's admission he did not submit the documents required, there remains no genuine issue of material fact that Defendants were required to hold a loan modification meeting with Donaldson.

The Court finds that Donaldson has failed to create genuine issues of material fact that the foreclosure proceedings against him were wrongful or illegal. Summary judgment as to Count I is granted in favor of Defendants.

**C. RESPA and TILA (Count II)**

Defendants argue that Donaldson's claims under RESPA and TILA are without merit because they properly responded to Donaldson's inquiries under RESPA and TILA. Donaldson admits that he did receive certain responses from Defendants, but that the responses were not received within the time frames under RESPA and TILA.

**1. RESPA**

RESPA provides that a borrower may submit a qualified written request ("QWR") to its loan servicer for "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). A "qualified written request" is defined as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium by the servicer, that–

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Section 2605(e)(1) provides that upon receipt of a qualified written request ("QWR") from a borrower, the loan servicer must provide a written response acknowledging receipt of the correspondence within 20 days of receipt (excluding legal public holidays, Saturdays and Sundays). 12 U.S.C. § 2605(e)(1)(B) (2006).[1] Section 2605(2) then requires a loan servicer to "transmit" or "provide" a response to a borrower's inquiry within 60 days (excluding legal public holidays, Saturdays and Sundays) when it receives a QWR from the borrower. 12 U.S.C. § 2605(e)(2) (2006). The servicer is to conduct an investigation and then, if applicable: 1) make corrections to the borrower's account; 2) provide a statement of the reasons why the servicer believes the borrower's account is correct; 3) provide contact information that the borrower may call for assistance; 4) provide the borrower with the information requested; or 5) provide an explanation of why the requested

[1] 12 U.S.C. § 2605(e) was amended effective July 21, 2010, but the effective date was delayed until January 10, 2014. See 78 Fed. Reg. 10,902, 11,007 (effective Jan. 10, 2014). Effective January 10, 2014, the time to acknowledge a QWR is reduced to 5 days from 20 days and the time to respond to a QWR is reduced to 30 days from 60 days. 12 U.S.C. § 2605(e)(1) and (2) (2010).

information is unavailable or cannot be provided by the servicer. 12 U.S.C. § 2605(e)(2)(A) - (C). A servicer may choose a method of response; there is no duty to comply with all three. *Weinert v. GMAC,* 2009 WL 3190420 * 8 (E.D. Mich. Sept. 29, 2009). If a loan servicer violates § 2605(e), the borrower is entitled to actual damages. 12 U.S.C. § 2605(f).

Donaldson argues that he sent a letter dated April 29, 2011 to Defendant BOA which BOA claims it never received. Donaldson asserts that Defendant BOA's May 18, 2011 letter acknowledging receipt of a "recent inquiry" establishes that BOA received Donaldson's April 29, 2011 letter, but failed to respond to the letter within 60 days under RESPA. Donaldson testified at his deposition that he "likely" sent the April 29, 2011 letter via certified mail return receipt requested, but that the receipt has "been misplaced " and he is "not able to find it at this time." (Donaldson Dep., p. 52, Doc. No. 20, Ex. E) BOA submitted a declaration that it searched its database and it could not locate the April 29, 2011 letter. (Canaveral Decl., ¶ 8; Doc. No. 20, Ex. 1) BOA claims that because it did not receive the April 29, 2011 letter the time limits under RESPA to respond were not triggered. BOA asserts that Donaldson failed to carry his burden that the April 29, 2011 letter was sent or that BOA received the letter.

In addition to the April 29, 2011 letter by Donaldson alleged he had sent to

BOA, Donaldson also sent a July 20, 2011 letter to BOA, which he admits at his deposition was responded to by BOA, but that it was sent more than the 60 days required by the statute. (Donaldson Dep., p. 52, Doc. No. 20, Ex. E)

Based on the record before the Court, the Court finds that Donaldson failed to carry his burden that the April 29, 2011 letter was sent or received by BOA. The time to respond under RESPA was, therefore, not triggered. Even if the April 29, 2011 letter[2] was sent or received by BOA, the Court finds that the letter was not a proper QWR under RESPA. A letter does not constitute a QWR as defined by RESPA if the letter does not relate to the servicing of a borrower's loan as defined under 12 U.S.C. § 2605(i)(3) or does not identify any error as required by § 2605(e)(1)(B). *See, Knight-Bonner v. BAC,* 2012 WL 6802075, at *3 (E.D. Mich. Oct. 9, 2012). "Servicing" of a loan means receiving any scheduled period payments from a borrower pursuant to the terms of any loan, including any escrow accounts, and making the payments of principal and interest and any other payments required by the terms of the loan. 12 U.S.C. § 2605(i)(3).

Donaldson's April 29, 2011 letter does not identify any error made by the loan servicer as required by the statute. Instead, as in the letter in *Knight-Bonner*, the letter contains vague assertions that Donaldson was a victim of predatory lending. *Id.*

[2] Attached as an exhibit to the Complaint (Doc. No. 1).

Donaldson essentially requests all documents relating to the loan, including mortgage/deed documents, assignments, escrow analysis, tax information, servicing agreements, copies of every canceled check, money order regarding any monthly payments, and many other documents. (April 29, 2011 letter, Ex. to Complaint, Doc. No. 1) The April 29, 2011 letter does not seek information as to the terms of the loan that relate to the servicing of the loan, such as the monthly payment amount, including principal, interest, escrow, or any other payments required under the terms of the loan.

Even if the April 29, 2011 letter is considered a proper QWR, again, as in *Knight-Bonner,* BOA responded to another purported QWR letter dated July 20, 2011 sent by Donaldson. Donaldson admits such a response was sent, but argues that the letter was not sent within the 60 days under RESPA. BOA received the July 20, 2011 letter on July 25, 2011. BOA's response to the letter is dated October 19, 2011. (Resp., Doc. No. 20, Ex. J) The Court's calculation is that October 19, 2011 is within 60 days from the July 25, 2011 date BOA received Donaldson's July 20, 2011 letter, which the Court finds is timely under RESPA. The statute does not require that Donaldson "receive" the response within 60 days, but that the servicer "transmit" or "provide" a response to the letter. Donaldson has failed to create a genuine issue of material fact as to his claim under RESPA.

**2. TILA**

TILA "was enacted to promote the informed use of credit by consumers requiring meaningful disclosure of credit terms." *Begala v. PNC Bank, Ohio, N.A.,* 163 F.3d 948, 950 (6th Cir. 1998); 15 U.S.C. § 1601 *et seq*. Generally, a violation of TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The one-year period is subject to equitable tolling under limited circumstances. *Jones v. Transohio Savings Assoc.,* 747 F.2d 1037, 1041 (6th Cir. 1984). The one-year period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation. *Jones,* 747 F.2d at 1041.

In this case, Donaldson alleges in his Complaint that he executed the promissory note and mortgage at issue on April 28, 2006. The mortgage was assigned to U.S. Bank on April 8, 2011. (Resp., Doc. No. 20, Ex. C) Donaldson claims that Defendants violated TILA by not providing proper disclosures regarding the assignment of his mortgage. Any TILA claim by Donaldson as to the original note and mortgage and the assignment of such are time-barred. Defendants are entitled to summary judgment on Donaldson's TILA claims.

**D. FDCPA (Count III)**

Defendants argue that Donaldson's claims under the FDCPA must be dismissed

since they are not considered a "debt collector" under the statute. Donaldson responds that Defendants, as servicers, are debt collectors under the FDCPA.

The FDCPA, 15 U.S.C. § 1601 *et seq.,* governs debt collectors' actions. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and to promote actions to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e); *Grden v. Leikin Ingber & Winters, PC,* 643 F.3d 169, 172 (6th Cir. 2011). The Act applies only to a "debt collector," which is defined as a person who "attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6); *see Glazer*, 704 F.3d at 457. In *Joyner v. MERS*, 451 Fed. App'x 505, 507 (6th Cir. 2011), the Sixth Circuit stated that "a creditor is not a debt collector under the FDCPA." As servicer and the owner of the debt at issue and where the loan was not in default when the servicer or assignee began servicing or acquired the loan, the servicer is not a "debt collector" under the Act. *See Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 359-61 (6th Cir. 2012).

Donaldson has not submitted any evidence that Defendants are "debt collectors" as defined under the FDCPA. Defendants were the loan servicers and owners of the debt. There is no evidence that when the loan was assigned, the loan was in default. Donaldson's claim under the FDCPA must be dismissed.

**E. Unjust Enrichment and Third Party Beneficiary Claims (Count IV)**

### 1. Unjust Enrichment

Defendants argue that the unjust enrichment claim must be dismissed because there exists a written agreement between the parties. Donaldson claims that Defendants could have caused the foreclosure sale to occur sooner and that Defendants obtained further benefit by waiting and continuing to add fees and interest to the loan amount, making the redemption amount extremely inflated. Defendants reply that Plaintiff's response is nonsensical and did not address Defendants' argument as to Plaintiff's unjust enrichment claim.

The elements of a claim for unjust enrichment are: 1) receipt of a benefit by the defendant from the plaintiff and 2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 546 (1991). In such instances, the law operates to imply a contract in order to prevent unjust enrichment. *Barber v. SMH (US), Inc.,* 202 Mich. App. 366, 375 (1993). However, a contract will be implied only if there is no express contract covering the same subject matter. *Id.*

In this case, there was an express written agreement between the parties regarding the mortgage of the property at issue, as acknowledged by Donaldson. The Court cannot imply an agreement because an express written agreement between the parties governs the terms of the mortgage of the property at issue. Count IV, the

unjust enrichment claim, must be dismissed.

**2. Third-Party Beneficiary**

Donaldson claims that he was a third-party beneficiary to the transactions and agreements entered into by Defendant US Bank because the note and mortgage were paid in full by these transactions at least three times by other parties.

In Michigan, an incidental beneficiary has no rights under a contract. *Koenic v. City of South Haven,* 460 Mich. 667 (1999). Only intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract. M.C.L.A. § 600.1405; *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools,* 443 Mich. 176 (1992). A third party cannot maintain a breach of contract simply because he or she would have received a benefit from its performance or would be injured by its breach. *Id.* Third-party beneficiary status requires an express promise to act to the benefit of the third party and where no such promise exists, that third party cannot maintain an action for breach of contract. *Kisiel v. Holz,* 272 Mich. App. 168 (2006).

Donaldson has not pointed to any contract provisions relating to US Bank's agreements with others which expressly identifies Donaldson as a beneficiary to any agreement. Donaldson has failed to create any genuine issue of material fact that he is a third-party beneficiary under any agreements made by US Bank with others. Any third-party beneficiary claim by Donaldson must be dismissed.

**III. PLAINTIFF'S MOTION TO STRIKE**

Donaldson seeks to strike Defendants' separately-filed Statement of Undisputed Material Facts In Support of Motion for Summary Judgment. Defendants respond that because the Statement is not a separate brief, it does not count towards the page number limitations under the Local Rules and should not be stricken.

E.D. Mich. Local Rule 7.1(d)(3) provides, "[t]he text of a brief supporting a motion or response, including footnotes and signatures, may not exceed 20 pages. A person seeking to file a longer brief may apply ex parte in writing setting forth the reasons." E.D. Mich. LR 7.1(d)(3). The Local Rules do not provide for a separate document to set forth further statements of facts. The separate statements of facts are ordinarily made a part of the main brief. Although it could be construed that Defendants attempted to circumvent the local rules regarding page limits by filing a separate statement, the Court will not strike the document since it merely reiterates the facts set forth in Defendants' main brief.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(Doc. No. 20)** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Separate

Statement **(Doc. No. 24)** is DENIED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager